## Case No. 7,576.

### The JULIA.

### [2 Spr. 164.] [1]

District Court, D. Massachusetts. May, 1862.

PRIZE—NEUTRAL RIGHTS—YEAR'S DELAY—MASTER AS WITNESS—CONDEMNATION.

1. The rule of a year and a day for claimants to appear. is not a vested right in neutrals. In what cases this delay must be conceded.

[Cited in Snow v. Edwards, Case No. 13,145.]

2. Prize law requires the captors to send in the master of the prize as a witness.

3. Vessel condemned after the lapse of a year and a day for an attempt to break the blockade of Beaufort, N. C.

In this cause there were no claimants, after the usual notice.

R. H. Dana. Jr., U. S. Atty., for the United States and the captors, demanded a condemnation of vessel and cargo, on the grounds of intended breach of blockade, and of false papers; and to the point that, although this vessel was under neutral flag and papers, she was not entitled to a year and a day for claimants to appear, he cited 1 Wheat. [14 U. S.] App. 501; The Avery [Case No. 672]; The Staadt Embden, 1 C. Rob. Adm. 29.

SPRAGUE, District Judge. This vessel was built and documented in the British provinces, and was sailing under British colors, and was unquestionably owned by British subjects up to a late period before the sailing. There is some evidence tending to show that she was sold just before she sailed, and a suspicion arises that she may have been sold to persons residing in the Rebel states; but of this there is no proof, and, if a sale was made. the papers continued in the name of the British owners. As to the breach of blockade, the course and conduct of the vessel was such as to warrant a condemnation, if full and fair opportunity had been given for evidence in the way of explanation.

The prize law requires the captors to send in the master of the prize, as a witness. The failure to do this, unless for some overpowering necessity, is, in the case of neutral vessels, a serious fault. In the present case, the testimony of the master would be most material, yet he was not sent in. To account for this, I allowed the district attorney to take "further proof," and the deposition of the commander of the Cambridge, who made the capture, has been taken. From this deposition it appears that it was as easy to send in the master as the seamen, yet the master was sent ashore at Fortress Monroe, and nothing has been heard of him since, while the men sent in as witnesses knew little or nothing, and could not be expected to know much about the actual ownership, papers, instructions, and objects of the vessel and voyage.

The commander justified his failure in this respect by the language of the circular instructions sent to him, which are to send in "two of the captured crew." He certainly has not transgressed the letter of his instructions; but the instructions should have been more explicit. They should have required the sending in of the master in all cases, if possible. But whether the fault rests with the captor, the flag officer of the squadron, or the department, the rights of neutrals are the same.

I do not feel authorized to condemn a vessel and cargo sailing under British flag and documents, of British build. and, on her papers, owned by British subjects, on such suspicions as appear in this case, where the captors have failed, without any excuse, to send in the master as a witness.

If the vessel and cargo is to be condemned, it must be for default of claimants. I am aware that the rule of the prize courts, to allow a year and a day in case of neutral vessels, for claimants to appear, is not a vested right in neutrals. It is allowed as of right where the condemnation, if decreed, must be solely on the ground of default. If the captors show a clear case of enemy property, or of contraband, or of breach of blockade, the court may condemn the vessel or cargo, although they are under neutral flag and papers, in the absence of claimants, without waiting a year and a day. So, if it shall be proved that the neutral owners have had notice and opportunity to appear, condemnation may go at once, solely on the ground of default, and the presumptions arising therefrom, without other proof. But I think that in this case, in the present state of the proofs, my duty to neutrals requires me to enforce the rule of the year and a day, and I do it on the ground of the mistake or neglect of the capturing power to send in the proper evidence when it was at their option to do so or not. There will be no increase of costs, or loss by deterioration, by reason of this delay, as the vessel and cargo have been sold by order of the court, and the proceeds placed in the registry.

After the expiration of a year and a day. proclamation having been made and no claimants having appeared, the cause was heard again on the preparatory proof and further proof which had been taken in the interval.

SPRAGUE, District Judge. This vessel sailed from St. John, N. B., Sept. 5, 1861, with a certificate of clearance. declaring her to be bound for Havana. The log-book represents Havana as the place of destination, to the last. The ship's articles read, "for Havana or any port in the United States the master may direct." The bills of lading cover but part of the cargo, and name no consignee. They are indeed only receipts. The vessel was found and captured. Sept. 23. near Bogue Inlet, leading to Beaufort, N. C., by the Unit-

¹ [Reported by Richard H. Dana. Jr.. Esq.. and here reprinted by permission.]

ed States gunboat Cambridge. Beaufort was at that time under an actual and effective blockade by the Cambridge and the Albatross. The mate testifies that he and the master knew that Beaufort was blockaded when they sailed from St. John, and that it was generally known at St. John. He admits that the vessel's course was direct for Beaufort. The cargo consists of lead, tin, iron, medicines, and leather, a part of which is contraband of war. There is no evidence to whom the cargo belonged, or whether it all belonged to one person, or whether the owner of the vessel was interested in it. The further proof creates a strong impression that the vessel had been sold to persons resident in the Rebel states, but that fact is not established.

In this state of the proofs, if the master had been sent in, and had failed to clear up the difficulties, I should, as I have before decided, have felt justified in condemning both vessel and cargo. As the failure to send him in, though not in violation of the letter of the circular instructions as they then stood, was in disregard of neutral rights, I declined to condemn the vessel, there being a fair possibility that the master, if present, might have aided the owners.

We have now the further fact that after a year and a day no claimant has intervened, and proof that the person who appears on the register to be the owner has been in Boston since the libel was filed, and knew of the pendency of the suit. A year and a day having elapsed since the libel was filed, and it satisfactorily appearing that this vessel attempted to run into the port of Beaufort in violation of the blockade, the vessel and cargo must be condemned. The decree of distribution was in favor of the Cambridge alone, the evidence showing that the Albatross was not within sight of the prize, or within signal distance of the Cambridge, during the chase or capture.